UNITED STATES, Appellee

v

JAMES L. LEGGS, Seaman Apprentice,
U. S. Navy, Appellant

18 USCMA 245, 39 CMR 245

No. 21,532

April 11, 1969

*Captain John J. Ruprecht*, USMCR, argued the cause for Appellant, Accused.

*Lieutenant Ray M. Druley*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Colonel C. R. Larouche*, USMC.

## Opinion of the Court

FERGUSON, Judge:

The accused pleaded guilty before a special court-martial, convened at the Naval Training Center, Great Lakes, Illinois, to two specifications of absence without leave and one specification of failure to obey a lawful order, in violation of Articles 86 and 92, Uniform Code of Military Justice, 10 USC §§ 886 and 892, respectively. He was sentenced to a bad-conduct discharge, confinement at hard labor for three months, forfeiture of $59.00 per month for three months, and reduction to E–1. As finally approved, the accused stands convicted, as charged, but his sentence has been reduced to a bad-conduct discharge, forfeiture of $59.00 per month for one month, restriction to the limits of the Naval Training Center, Great Lakes, Illinois, for forty days, and reduction to E–1. We granted review on the basis of appellate defense counsel's contention that the president did not adequately inquire into the providency of the accused's plea.

Trial of this case initially opened on November 6, 1967. After the court was convened, the accused, through his counsel, entered a plea of guilty. The president, thereupon, explained the conse-

quences of such a plea and inquired of the accused whether he understood what was said. At this point, defense counsel asked for a brief recess to consult with the accused. When the court was called to order fifteen minutes later, defense counsel informed the president that it appeared that the accused was incapacitated for trial. He requested a continuance pending the results of a medical examination. The request was granted and the court was recessed for eight days.

Upon reconvening on November 14th, defense counsel moved for appropriate relief on the ground that the accused lacked mental capacity to continue. The accused testified on the issue and was questioned by both trial counsel and the president. A Navy doctor, not a psychiatrist, testified for the Government as to the results of a prior medical examination of the accused for a matter not relative to the trial of the case. After argument of counsel, the president directed that the accused be psychiatrically examined and the court be recessed pending the completion thereof.

Upon reconvening on December 21, 1967, defense counsel informed the court that the accused had been examined,

246

given treatment and psychiatric counseling at the Naval Hospital, Great Lakes, and as a result counsel believed that the accused, at that time, possessed the requisite capacity to understand the nature of the proceedings and to cooperate in his defense. Accordingly, he withdrew his previous motion and, on behalf of the accused, entered a plea of guilty to the Charges and specifications. Thereupon the following colloquy occurred:

"PRES: James Lawrence Leggs, I now ask you how you plead, but before receiving your plea, I advise you that any motion to dismiss the charges or to grant other relief should be made at this time. Do you understand what I have just read to you?

"ACCUSED: Yes, sir.

"PRES: Let the record state or show that the man stated: Yes, sir.

"PRES: James Lawrence Leggs, you have pleaded guilty to all the Specifications and Charges. By so doing you have admitted every act or omission and every element of these offenses. Your plea subjects you to a finding of guilty without further proof of those offenses, in which event you may be sentenced by the court to the maximum punishment authorized for them, which is: Reduction to the grade of pay grade E–1; confinement at hard labor not to exceed six months; forfeiture not to exceed two-thirds pay per month for six months; and discharge from the naval service with a bad conduct discharge. You are legally entitled to plead not guilty and place that burden upon the prosecution of proving your guilt to these offenses. Your plea will not be accepted unless you understand its meaning and effect. Do you understand?

"ACCUSED: Yes, sir.

"PRES: Understanding this, do you still continue in your plea of guilty.

"ACCUSED: Yes, sir.

"PRES: The court is advised that a plea of guilty is an admission to every act or omission and every element of the offense to which such plea has been entered. Such a plea subjects the accused to a finding of guilty without further proof of those offenses.

"PRES: Do counsel have any further instructions to offer at this time?

"TC: The prosecution does not, Mr. President.

"DC: The defense does not.

"PRES: The court will be closed.

"The court closed at 1127 hours, 21 December 1967.

"The court opened at 1128 hours, 21 December 1967.

"PRES: The court will come to order.

"TC: All parties to the trial who were present when the court closed are again present.

"PRES: James Lawrence Leggs, seaman apprentice, U. S. Navy, it is my duty as president of this court to inform you that the court in closed session and upon secret written ballot, two-thirds of the members present at the time the vote was taken, concurring, finds you:

"Of all Charges and Specifications: Guilty."

The Government concedes that the president's inquiry into the accused's pleas of guilty did not comply with the procedure which this Court recommended to presiding officers in United States v Chancelor, 16 USCMA 297, 36 CMR 453, but contends that there is no prejudice in this case for the accused has not made a subsequent avowal of innocence.

We know of no case in this Court holding that before an issue of providency of the plea can be raised on appeal to this Court, that the accused specifically allege he is innocent or that if the plea is set aside he would not again plead guilty. The issue of providency may be raised by the assignment of error by defense on appeal to this Court, or by this Court upon examination of the record. It is the duty of the judicial officer to see that the record shows that the plea was providently entered by the accused and not by his lawyer. See

**247**

Article 45(a), Code, supra, 10 USC § 845.

Appellate defense counsel assert that there was sufficient evidence of the accused's mental instability and lack of comprehension before the president to put him on notice that a more thorough inquiry into the providence of the plea was required. Assertedly, his failure to do so was prejudicial.

It is quite apparent that the president was aware of the accused's mental incapacity at the time of the first session of the court for, upon defense counsel's announcement to that effect, he granted a continuance. Upon resumption, the accused testified and his answers to questions by his own counsel, the prosecution, and even the president himself, as to his understanding of what was taking place, were such that the president directed that a psychiatric examination be conducted. When the court met for the third time, the president, without further inquiry, accepted defense counsel's statement of opinion that the accused was capable of understanding the nature of the proceedings and of cooperating in his defense.

In light of the previous court proceedings, the president would have been well-advised to have re- ▊ quested testimony on this issue or at least asked for a copy of the psychiatric report, prepared at his direction. His *pro forma* inquiry into the accused's plea was, indeed, error. United States v Chancelor, supra; Article 45(a), Code, supra; Manual for Courts-Martial, United States, 1951, paragraph 70*b*.

Subsequent to the acceptance of the plea and a finding of guilty by the members of the court, defense counsel presented the testimony of the psychiatrist in the hearing on sentence. The latter testified that when he first examined the accused, he diagnosed him as a functional psychotic. He asserted the accused's mental state was a regression from a long-standing basically unstable personality. In point of fact, according to the witness, the accused's instability existed prior to his entry into the service. In his report, which is not in the record or allied papers, the psychiatrist related, he recommended that the accused be medically separated from the service.

Testimony of this nature in mitigation raises an additional question as to the accused's under- ▊ standing of his plea. United States v Trede, 2 USCMA 581, 10 CMR 79. Failure of the president to notice it and to make further inquiry was also error. Article 45 (a), Code, supra. Cf. United States v Vaughn, 17 USCMA 520, 38 CMR 318.

In our view of the record, a substantial question exists as to whether the accused had a proper understanding of the nature of his plea. In such circumstances a rehearing is required at which time the issue can be considered and testimony presented. United States v Thomas, 13 USCMA 163, 32 CMR 163.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Judge DARDEN concurs.

QUINN, Chief Judge (dissenting):

We pointed out in United States v Hinton, 8 USCMA 39, 41, 23 CMR 263, that, when an accused attacks the providency of a plea of guilty voluntarily entered at trial, "we cannot disregard the probability that the accused and his counsel weighed the evidence and determined that it was inadequate for an effective legal defense." Here, there is not probability, but certainty, that the accused and his counsel weighed the psychiatric evidence and determined it was wholly insufficient to raise an issue. The law presumes sanity; the accused and his counsel replaced the presumption with certainty by express representation in open court that the accused was competent to stand trial. The president of the court-martial was entitled to accept the defense evaluation of the evidence without requiring counsel or the accused to produce the psychiatric report upon which they based their representation. See United States v Cambridge, 3 USCMA 377, 12 CMR 133. Consequently, I see nothing in the proceedings before acceptance of the ac-

cused's plea of guilty to impugn the voluntariness or the providence of the plea. Also, I see nothing in the testimony of the psychiatrist during the sentence proceedings to negate the accused's understanding of the plea or which is inconsistent with the representations that the accused had the mental capacity to commit the offense and to cooperate in his defense. The testimony admitted to nothing more than an opinion that the accused had, as the majority observe, an "unstable personality." See United States v Edwards, 4 USCMA 299, 15 CMR 299; United States v Richards, 10 USCMA 475, 28 CMR 41. I would, therefore, affirm the decision of the board of review.