UNITED STATES, Appellee

v

FRANCIS C. COOK, Private First Class,
U. S. Army, Appellant

20 USCMA ·504, 43 CMR 344

No. 23,393

April 16, 1971

*Richard A. Glickstein, Esquire,* and *Captain Albert J. Mainelli, Jr.,* argued the cause for Appellant, Accused. With them on the brief was *Captain Howard L. Kaplus.*

*Captain Leon J. Schachter* argued the cause for Appellee, United States. With him on the brief was *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway, Captain James L. Rider,* and *Captain Benjamin G. Porter.*

FERGUSON, Judge:

The accused was convicted of one specification alleging absence without leave, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. He was sentenced to a bad-conduct discharge, total forfeitures, confinement at hard labor for one year, and reduction to the grade of E–1.

When the case originally was brought to trial on March 10, 1969, the accused, after being arraigned, attempted to enter a plea of guilty to the charged offense. The law officer, however, rejected the plea when he learned from the accused that the latter believed he was paranoid. An "indefinite continuance not later than two weeks" was granted in order for both sides to prepare to try the case. Defense counsel stated that he desired the time in order to have the accused examined relative to his mental condition.

When the court reconvened on April 21, 1969, six weeks later,[1] the accused was not present. In an out-of-court hearing, trial counsel presented evidence that the accused had been absent without leave since April 7th and defense counsel informed the law officer that his efforts to locate the accused, through a member of the family, had been unavailing. The law officer, citing as authority paragraph 11c, Manual for Courts-Martial, United States, 1969, directed that the trial proceed. After the court members were assembled, the law officer informed them that since the accused was voluntarily absent without leave,[2] the trial would be held in his absence. A plea of not guilty was entered on behalf of the accused by the law officer.

The evidence for the Government consisted solely of an extract copy of the morning report, which trial counsel read to the court, reflecting the accused's absence and his voluntary return to military control.

The defense presented the testimony of a civilian psychiatrist, a former Staff Psychiatrist at Kiesler Air Force Base, who examined the accused on April 3, 1969, and diagnosed him as suffering from "a phobic neurosis, manifested by fear of being among strangers or large numbers of people. Also by fears in rapidly changing situations." He characterized a phobic neurosis as a mental disease and opined that the accused was suffering from this mental disease at the present time and at the time he originally absented himself without authority. The psychiatrist, while he believed that the accused "could distinguish an act that was wrong," did not think "he could adhere to the right." He testified: "I felt that his ability to adhere to the right was impaired due to his mental disease." He expressed the opinion that the accused, at the time of his examination, possessed sufficient mental capacity to understand the court-martial proceedings and to cooperate in his defense. However, he declined to make an estimate as to his behavior as of the date of the trial, because "not having seen him again, it is quite possible that these factors would have changed."

Appellate defense counsel contend that the law officer abused his discretion by resuming the trial *in the absence of the accused* in light of the substantial question which existed regarding the accused's mental status.

In 21 Am Jur 2d, Criminal Law, Presence of Accused, § 271, pages 305–306, the following is noted:

"A leading principle that pervades the entire law of criminal procedure is that after indictment found, nothing should be done in the absence of the prisoner. The right of a prisoner

---

[1] The record is silent as to why the court did not reconvene within the allotted two weeks.

[2] The court members were cautioned not to "infer that the accused has an evil disposition or criminal propensity and he therefore committed the offense alleged," simply because he was not then present.

to be present at his trial derives from the common law, although it is frequently guaranteed by constitution or statute. The right to be present has been called a right scarcely less important to the accused than the right of trial itself. And it has been said to be just as fundamental as the right to trial by an impartial jury. Where a right so fundamental is denied, the guilt or innocence of the accused is not concerned and neither party is put to the burden of showing actual injury or prejudice or the lack of it, injury being conclusively presumed. Denial of this right may violate the guaranty of due process of law, but it has been held that the presence of the defendant is a condition of due process under the Fourteenth Amendment to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only. Conversely, where defendant's presence at his trial will be useful or of benefit to him and his counsel, the lack of his presence becomes a denial of due process of law." [Extensive citations omitted.]

And in 21 Am Jur 2d, Criminal Law, Waiver, § 279, page 312, we observe:

"Some courts have regarded defendant's presence at a felony trial as a jurisdictional requirement, which cannot be waived. Many others, however, do not accept this view. In defense of the view that the right cannot be waived, it has been stated that the public has an interest in the life and liberty of an accused person and that that which the law makes essential in a trial cannot be dispensed with either by the consent of the accused or by his failure to object to unauthorized methods. On behalf of the opposite rule, it has been argued that the right is essentially for the benefit of the accused and that since the accused, by pleading guilty, can waive any trial at all and subject himself to the severest penalty which might follow a trial, he should be able to waive any mere privilege on the trial that is designed only to aid him in shielding himself from such

result. Statutes declaring that the accused must be present during the trial, or that he cannot be tried unless personally present in a felony case, have sometimes been construed as imposing an affirmative requirement which cannot be dispensed with by the accused or his counsel, but other courts have regarded them as granting or confirming a right which defendant is nevertheless free to relinquish. Sometimes waiver is authorized by statute." [Extensive citations omitted.]

The military rule is clear. Article 39, Code, supra, 10 USC § 839, requires that *all proceedings of the court,* except the deliberations and voting by the members, *be conducted in the presence of the accused.* See generally, cases cited in Tedrow, Digest, Annotated and Digested Opinions, U. S. Court of Military Appeals, Military Due Process, Confrontation and Presence at Trial, pages 655–658, and Trial and Procedure, Closed Conferences, pages 967–971. The right of an accused to be present, however, may be waived. Paragraph 11c, Manual, supra, provides:

". . . The accused's voluntary and unauthorized absence after the trial has been commenced in his presence by arraignment does not terminate the jurisdiction of the court, which may proceed with the trial to findings and sentence notwithstanding his absence. In such a case the accused, by his wrongful act, forfeits his right of confrontation."

This provision of the Manual, which has the force of law (United States v Smith, 13 USCMA 105, 32 CMR 105 (1962)), is in accord with Rule 43, Federal Rules of Criminal Procedure. See Illinois v Allen, 397 US 337, 342, 343, 25 L Ed 2d 353, 90 S Ct 1057, rehearing denied, 398 US 915, 26 L Ed 2d 80, 90 S Ct 1684 (1970), and cases cited therein.

The right of an accused to be present at his trial is guaranteed by the Sixth Amendment to the United States Constitution. Illinois v Allen, supra. In holding in *Allen* that the trial judge

506

did not abuse his discretion in banishing that accused from the courtroom for repeated unruly conduct, the Supreme Court cited Johnson v Zerbst, 304 US 458, 464, 82 L Ed 1461, 58 S Ct 1019 (1938), for the proposition that courts must indulge every reasonable presumption against the loss of constitutional rights. In speaking of the right to counsel, also contained in the Sixth Amendment, the Court in Johnson v Zerbst, supra, stated at page 464:

> ". . . It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights[12] and that we 'do not presume acquiescence in the loss of fundamental rights.'[13] A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to Counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

"[12] Aetna Ins. Co. v Kennedy, 301 US 389, 393, 81 L Ed 1177, 1180, 57 S Ct 809 [1937]; Hodges v Easton, 106 US 408, 412, 27 L Ed 169, 171, 1 S Ct 307 [1882].

"[13] Ohio Bell Teleph. Co. v Public Utilities Commission, 301 US 292, 307, 81 L Ed 1093, 1103, 57 S Ct 724 [1937]."

Cf. United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967); United States v Donohew, 18 USCMA 149, 39 CMR 149 (1969); United States v Care, 18 USCMA 535, 40 CMR 247 (1969).

In United States v Houghtaling, 2 USCMA 230, 8 CMR 30 (1953), this Court approved a trial *in absentia* where the record disclosed that subsequent to arraignment of the four accused, and during a period of a continuance, one of the accused *escaped from confinement and was then at large*. In this case, the accused, subsequent to arraignment, was, according to official military records, absent without leave when the court reconvened. His whereabouts at the time and when or whether he would return was unknown to defense counsel. Based on this information, the law officer concluded that the accused was *voluntarily* absent and ordered the trial to proceed.

We believe that the law officer failed to make a proper exploration of the issue of the *voluntariness* of the accused's absence from his trial, especially in light of the substantial question which existed at that time of the accused's mental responsibility. The law officer had, six weeks earlier, refused to accept a plea of guilty because he was concerned that the accused may have been suffering from a mental condition which rendered him unable to report to his assigned place of duty following his return from Vietnam, during the period alleged in the specification. The accused himself had stated, in answer to specific inquiries that he was "scared of people"; "I . . . think they are watching me. I can't seem to act right with all of them around"; "I knew I was supposed to report back; I was just scared to come back"; "It was like I wanted to be by myself all the time." The accused thought he might be paranoid. As the law officer informed defense counsel, "You can't plead a man guilty that thinks he is suffering from a mental disease, defect or derangement."

On March 10th, the law officer very commendably recognized that the accused was in no condition to make a "knowing, intelligent, and conscious waiver" of his constitutional rights against self-incrimination, to be confronted by the witnesses against him, and to a trial of the facts by a court-martial. United States v Care, supra, at page 542. Yet, on April 21st, with regard to the right of the accused to be present at his own trial, a constitutional right closely related to and of equal importance to the right to plead not guilty, the law officer made only the most perfunctory, narrow, and incomplete examination as to the accused's whereabouts. Under the circumstances

**507**

of this case, he demonstrated, in our opinion, a lack of understanding of the fundamental importance of the right of an accused to be present at his trial. The subsequent testimony of the psychiatrist that the accused was suffering from a "phobic neurosis, manifested by fear of being among strangers or large numbers of people" and that he did not think "he could adhere to the right . . . his ability to adhere to the right was impaired due to his mental disease," also should have placed the law officer on notice that the accused's absence from trial was perhaps not *voluntary*.

The nature of the issue before us is not unlike the question presented in United States v Leggs, 18 USCMA 245, 39 CMR 245 (1969). In *Leggs*, the president of a special court-martial granted a defense motion for a continuance pending receipt of a medical report bearing on the accused's mental capacity. Later, he himself directed a second continuance for the purpose of a psychiatric examination of the accused. At the third meeting of the court, he accepted the accused's plea of guilty on the basis of no more than a *pro forma* inquiry into the providence of the accused's plea of guilty, following acceptance, without further inquiry, of defense counsel's statement of opinion that the accused was capable of understanding the proceedings and of cooperating in his defense. In reversing and directing that a rehearing may be ordered, we stated at page 248:

> "In light of the previous court proceedings, the president would have been well-advised to have requested testimony on this issue or at least asked for a copy of the psychiatric report, prepared at his direction."

When the testimony of a psychiatrist was offered in mitigation, reflecting that the accused had been diagnosed as a functional psychotic, we held:

> "Testimony of this nature in mitigation raises an additional question as to the accused's understandng of his plea. United States v Trede, 2 USCMA 581, 10 CMR 79 [1953]. Failure of the president to notice it

and to make further inquiry was also error. Article 45(a), Code, supra. Cf. United States v Vaughn, 17 USCMA 520, 38 CMR 318 [1968]."

See also United States v Batts, 19 USCMA 521, 42 CMR 123 (1970).

In light of the admonition of the Supreme Court that "courts must indulge every reasonable presumption against the loss of constitutional rights" (Illinois v Allen, supra, at page 343), we hold that, under the circumstances of this case, the law officer erred to the substantial prejudice of the accused by resuming the trial in the absence of the accused. Since we believe that a rehearing is in order, we need not decide the other granted issues.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army. A hearing should be conducted at the trial level, in the presence of the accused and counsel, to determine whether the accused was voluntarily absent from the trial on April 21st. If his absence is determined to have been involuntary, a rehearing on the merits may be ordered. If found to have been voluntary, the case should be returned for completion of appellate review.

Chief Judge QUINN concurs.

DARDEN, Judge (dissenting):

The law officer in this case decided to resume trial of the appellant *in absentia* with knowledge that the latter had undertaken an unauthorized absence that began April 7, 1969, and that his whereabouts remained unreported on the date the trial resumed. This is the content of a morning report extract introduced in evidence as Prosecution Exhibit 1. That is not all. At the same time defense counsel advised the law officer that he had personally been unsuccessful in every attempt to contact Cook but had managed to find Cook's cousin, an attorney, who promised to have Cook returned by April 4, 1969. On April 21, 1969, the date this trial resumed, this promise was still unfulfilled.

Important, too, are the expressions of this appellant who, before the recess, admitted to the law officer that he had failed to report to his unit as required because, in addition to being scared, he had family problems. In fact, Cook did not feel he was "unable to report." Equally significant is that, following a recess, defense counsel specifically advised the law officer that he did not intend to raise an issue, during this trial, of the appellant's capacity to stand trial or cooperate in his own defense.

Considering all this, what more could the law officer have done to conduct "a proper exploration of the issue of the *voluntariness* of the accused's absence from his trial"? Where would he have obtained his information? An unauthorized absence that began after the trial started must be presumed voluntary. If the defendant has evidence that counters this presumption, he has the responsibility of coming forward with it. United States v Parker, 91 F Supp 996 (MD NC) (1950), affirmed, 184 F2d 488 (CA 4th Cir) (1950). Should he do so, appellate authorities have the power to take corrective action. The majority opinion gives the law officer a responsibility that I think attaches to the appellant. I am satisfied that the law officer adequately inquired into the voluntariness of the absence.

The remaining issues in this case are whether the Court of Military Review erred in finding the appellant mentally responsible at the time of the offense and whether that court applied an incorrect test of mental responsibility by requiring a showing of total impairment of ability to adhere to the rght.

Two medical experts testified during the course of this court-martial. Dr. Reilly related in behalf of the defense that he believed appellant had an impaired ability to adhere to the right at the time the offense occurred. This condition, he said, was brought about by a "psychotic illness." Major Crews, testifying for the prosecution in rebuttal, was of the opinion that at the time in question appellant's ability to adhere to the right was unimpaired.

The Court of Military Review considered post-trial affidavits by psychiatrists who also varied in their conclusions. One affiant believed that during his absence Cook suffered a total inability to adhere to the right. Two others joined in concluding that Cook had only suffered partial impairment. Having considered all of the evidence at hand, the Court of Military Review denied the appellant's motion to rescind its affirmance of his conviction in these words:

"All psychiatrists who examined appellant were of the opinion that he knew right from wrong at the time of the offense, and those expressing an opinion thereon were of the opinion that he was able to understand the nature of the procedings against him and intelligently to cooperate in his defense. Only one believed that he was unable to adhere to the right at the time of the offense (civilian psychiatrist post-trial), while the remainder were of the opinion that his ability in this regard was 'impaired' (civilian psychiatrist, defense witness at trial), or 'substantially impaired' (board of medical officers convened post-trial pursuant to our order), but not total. His condition was variously diagnosed as 'paranoid schizophrenic syndrome' (civilian psychiatrist post-trial), 'phobic neurosis' possibly approaching the early stages of schizophrenia (civilian psychiatrist, defense witness at trial), or 'Paranoid State' but not 'paranoid schizophrenic reaction' (board of medical officers convened post-trial pursuant to our order).

"We have reviewed the record of trial and considered all the post-trial matters related herein and are not disposed to disturb the decision of the Board of Review (see United States v Chappell, 19 USCMA 236, 41 CMR 236 (1970); United States v Fleming, 7 USCMA 543, 23 CMR 7 (1957)). Appellant's motions, accordingly, are denied."

The standard in mental responsibility is well settled in military law. An appellant is legally responsible for his acts if at the time of the offense he is so far free from mental defect, disease, or derangement as to be able, concerning

**509**

the acts charged, both to distinguish right from wrong and to adhere to the right. Only a total inability to adhere to the right will exculpate. United States v Storey, 9 USCMA 162, 25 CMR 424 (1958); United States v Chappell, 19 USCMA 236, 41 CMR 236 (1970). Despite a minor modification of paragraph 120*b*, Manual for Courts-Martial, United States, 1969 (see also Manual for Courts-Martial United States, 1969 (Revised edition)), promulgated no significant change in this rule. See Analysis of Contents, Manual for Courts-Martial, United States, 1969, paragraph 120*b*.

The Court of Military Review therefore applied the proper standard in resolving the mental issue against this appellant. The evidence amply supports that action. United States v Wimberley, 16 USCMA 3, 36 CMR 159 (1966). In my opinion, neither of these remaining issues entitles the appellant to relief.

I would affirm the decision of the Court of Military Review.