UNITED STATES

v.

**Lenwood J. SANDERS, 249 25 2447, Fireman Apprentice (E–2), U.S. Naval Reserve.**

**NMCM 90 0148.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 29 Nov. 1989.

Decided 26 Sept. 1990.

835

LT Jacob R. Walker, JAGC, USNR, Appellate Defense Counsel.

LT Wade W. Parrish, JAGC, USNR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before BYRNE, FREYER and STRICKLAND, JJ.

FREYER, Judge:

After the military judge had approved the appellant's request for trial by military judge alone and assembled the court, the appellant was arraigned on one charge with three specifications of absence without leave from Fleet Training Center, Naval Station, Norfolk, Virginia. He pled guilty to Specifications 1 and 3, and not guilty to Specification 2. The providence inquiry relative to Specifications 1 and 3 was conducted satisfactorily, although not without difficulty. The Government introduced documentary evidence tending to establish the appellant's guilt of Specification 2 and rested. The appellant then took the stand and gave testimony indicating confusion as to several matters and between the circumstances surrounding Specifications 1 and 2. Evidence of the appellant's 19 AFQT and 35 GCT scores being not yet before the court, the military judge suspected that his lapses might be due to a mental disease or defect and quite properly ordered a mental examination in accordance with Rule for Courts–Martial 706, Manual for Courts–Martial, United States, 1984. He correctly noted that the plea of guilty to Specification 1 had been compromised by the appellant's testimony on Specification 2, and he avoided the mistake of the military judge in *United States v. Brown*, 12 M.J. 728 (NMCMR 1981), who had failed to set any date for the trial of that case to resume, by continuing the trial of this case to 0900, 9 November 1989, and cautioning the appellant regarding trial *in absentia*, using that time and date certain as the point of reference.

Unfortunately, the trial did not resume on 9 November 1989, and the military judge did not conduct a proceeding of record to reset it. Apparently, at some time before the 9th, the case had been redocketed for 29 November 1989, extrajudicially and without the presence of the appellant. (While we do not mean to impose an inflexible system of docketing in Article 39(a) sessions only, we are fully in accord with the views of the U.S. Court of

Military Appeals in *United States v. Carlisle*, 25 M.J. 426 (C.M.A.1988), concerning docketing practices which do not make an adequate record of critical events in at least *some* form.) When the trial resumed on that date, the appellant was absent without leave. In laying a foundation for proceeding *in absentia*, the military judge announced on the record that, just before the session on the 29th, he had conducted a conference in accordance with Rule for Courts–Martial 802, Manual for Courts–Martial, United States, 1984, at which the detailed defense counsel disclosed that he had informed the appellant of the resetting of his trial date to the 29th. He then asked the defense counsel on the record when he had so informed the appellant, and the defense counsel replied that it was before the scheduled session on the 9th. (There is no indication in the record of how much before the 9th, or of how the defense counsel informed the appellant, or of whether the defense counsel volunteered the disclosure or had been ordered to make it.)

The trial counsel then presented some documentary evidence tending to show that the appellant's absence was unauthorized and, in order to establish that it was voluntary, called his legalman as a witness to report the negative results of the latter's telephone contacts with hospitals and jails in the Norfolk area (to which no hearsay objection was made). The record does not reveal whether or not the defense counsel had maintained contact with the appellant, nor whether or not he had any idea of his whereabouts. Prosecution Exhibit 1, his enlistment contract, shows his home of record as an address in Charleston, South Carolina. During the providence inquiry and his testimony on Specification 2, he repeatedly stated that he had gone to or remained in South Carolina during each of his absences without leave. He referred to Charleston as his "home" and mentioned that his "family" was there. We wonder, therefore, why the trial counsel's legalman was instructed to call hospitals and jails in and around Norfolk but not the Shore Patrol, the city police department, nor the appellant's family in Charleston. As a result, although there may be no absolute

requirement to do so, we remain uneasy about the efforts, or lack thereof, to establish contact with, or the whereabouts of, the appellant. *Cf. United States v. Cook*, 20 U.S.C.M.A. 504, 43 C.M.R. 344 (1971).

In any event, the military judge ruled that the appellant's absence was voluntary, based on—in part on the knowledge garnered from the defense counsel that he, in fact, indicated to him that there would be a session of this case today.

Specification 1 having been withdrawn, trial proceeded *in absentia* on Specifications 2 and 3, the military judge noting that the guilty plea to Specification 3 was accepted. The appellant was found guilty of Specifications 2 (less one day) and 3 and of the Charge and was sentenced to reduction to pay grade E–1, forfeiture of $250.00 pay per month for 4 months, confinement for 100 days, and a bad-conduct discharge. The convening authority approved the sentence.

The case was submitted to us without assignment of error, but we specified the issues listed below.

## I

WAS THE REPRESENTATION BY THE DEFENSE COUNSEL, MADE IN A RULE FOR COURTS–MARTIAL 802 CONFERENCE, THAT HE HAD ADVISED THE APPELLANT OF THE RESCHEDULED TRIAL DATE EVIDENCE THAT THE MILITARY JUDGE MIGHT CONSIDER IN FINDING THAT THE APPELLANT'S ABSENCE FROM THE 29 NOVEMBER 1989 SESSION WAS VOLUNTARY AND UNAUTHORIZED?

## II

DID THE DEFENSE COUNSEL BREACH HIS DUTY OF LOYALTY TO HIS CLIENT BY DISCLOSING, IN A RULE FOR COURTS–MARTIAL 802 CONFERENCE, THAT HE HAD ADVISED THE CLIENT OF THE RESCHEDULED TRIAL DATE, WHICH INFORMATION WAS USED TO THE CLIENT'S DISADVANTAGE BY THE

COURT IN FINDING THE CLIENT'S ABSENCE FROM THE 29 NOVEMBER SESSION TO BE VOLUNTARY AND UNAUTHORIZED?

## III

IF THE DEFENSE COUNSEL'S DISCLOSURE WAS NOT EVIDENCE, IS THE EVIDENCE SUFFICIENT TO SHOW THAT THE APPELLANT'S ABSENCE FROM THE 29 NOVEMBER SESSION WAS VOLUNTARY AND UNAUTHORIZED? *See United States v. Brown*, 12 M.J. 728 (NMCMR 1981).

We shall first address issue II, then issue I. At that point it will not be necessary to address issue III, because, for reasons that will become clear, a procedural error requires that the findings and sentence be set aside.

■ Although we are aware of no cases applying the rule to trials *in absentia*, a line of federal cases dealing with failure to appear and bail-jumping holds that a communication from a defense attorney to a defendant notifying the latter of a trial date is not a privileged communication, *United States v. Clemons*, 676 F.2d 124 (5th Cir.1982); *United States v. Uptain*, 552 F.2d 1108 (5th Cir.), *cert. denied*, 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142 (1977); *United States v. Bourassa*, 411 F.2d 69 (10th Cir.), *cert. denied*, 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192 (1969), and that the attorney may, therefore, be called as a prosecution witness to testify to the communication. While we do not suggest that a defense counsel has any duty to come forward and volunteer such information to the detriment of a client, we do believe that, when asked for such information by the court or even opposing counsel, the defense counsel should not conceal nor dissimulate it, for it is outside the attorney-client privilege, and, with respect to unprivileged information, a lawyer is under a duty to be candid with the court and not unlawfully to obstruct an opponent's access to evidence. *See* Rules 3.3 and 3.4, American Bar Association *Model Rules of Professional Conduct* (1987). Accordingly, we answer the second specified issue in the negative.

■ It is noteworthy, however, that, in each of the Court of Appeals cases cited above, the defense attorney testified under oath as an ordinary witness, and the defendant was represented by other counsel. Although, in each of those cases, the defense attorney's testimony was presented on the merits of a substantive offense in what was technically a different case from the one in connection with which the notification was given, vice a procedural issue in the same case, that is a mere circumstance. What is significant is that the rules of evidence apply equally to procedural issues as to the general issue of guilt or innocence, except as mentioned in Military Rules of Evidence (Mil.R.Evid.) 104(a) and 1101(d). Case law makes it unmistakably clear that, as a general rule, assertions of counsel of supposed fact are not evidence, even on motions. *Vanover v. Clark*, 27 M.J. 345 (C.M.A.1988); *United States v. Facey*, 26 M.J. 421 (C.M.A.1988); *United States v. Watson*, 14 M.J. 593 (AFCMR 1982). As was said in *United States v. Barbeau*, 9 M.J. 569 (AFCMR 1980):

> Statements of counsel, even as officers of the court, if inadmissible hearsay, are incompetent as evidence and may not be considered by the court even in the absence of an objection. [Citation omitted.] Such statements are particularly inappropriate as a basis for determining the fundamental issue of personal jurisdiction.

■ While hearsay is no longer incompetent *per se*, statements of counsel not under oath, unless incorporated into stipulations or judicial notice, are incompetent as evidence also under Mil.R.Evid. 603. Nor may such statements be "smuggled" into the record by the military judge for the truth of the matters asserted via Mil.R.Evid. 605(b). And, needless to say, we are completely unreceptive to appellate government counsel's suggestion that the defense counsel effectively waived any objections on behalf of the appellant to consideration of his own incompetent assertions as evidence against the appellant while he was

temporarily functioning, not as a defense counsel, but formally as an officer of the court and practically as an adverse witness. Although the issue of the authority of a military tribunal to proceed *in absentia* may not be quite jurisdictional, *Cook*:

> [t]he right to be present during trial is fundamental and has been called "scarcely less important to the accused than the right of trial itself." 21 Am Jur 2d, Criminal Law, § 271.

*United States v. Staten*, 21 U.S.C.M.A. 493, 45 C.M.R. 267 (1972).

██ While we do not condone it, neither do we deny the existence of the practice of treating averments of counsel in motion papers, in open court, or both as part of the evidentiary mass upon which a decision is rendered, as illustrated by *Facey*. In such instances the averments of counsel are commonly treated as *de facto* stipulations in order to effect a practical resolution of the issues. *United States v. Aker*, 19 M.J. 733 (AFCMR 1984), *pet. denied*, 20 M.J. 133 (1985). Treatment of the averments as stipulations is tolerable, however, because, and only because, the matters are not in dispute, counsel for both sides *and the accused* are present and agreeable to the practice, and the averments of counsel serve merely as a shortcut to get the undisputed matters into the record. (This case presents a much riskier variant of the practice, because the averment in question was made in an 802 conference; thus, even the precise terms of the averment do not appear in the record.) Such treatment was impracticable in this case, because the appellant was not present in court, and there was no way to obtain his assent to the irregular procedure that was followed. We do not find in the record any indication that the appellant authorized the defense counsel to stipulate to, or otherwise admit, the adverse matter in question, and we are most unwilling to imply such authority in one who, as we have noted, was then functioning, not as a defense counsel, but formally as an officer of the court and practically as an adverse witness. What resulted was that the defense counsel was permitted, if not compelled, "to essentially testify without cross-examination" against the appellant. *Vanover v. Clark.*

Even when an accused is absent from trial, some courts have considered the statements of defense counsel, at least to the extent of framing the issue before the court, but only with respect to clearly verifiable matters not in dispute, and only when the statements apparently served the interests of the client. Thus, in *United States v. Aldridge*, 16 M.J. 1008 (ACMR 1983), *pet. granted* (on specified issue of multiplicity), 18 M.J. 107 (1984), *reconsideration of order denying petition on other issues denied*, 18 M.J. 448 (1984), the defense counsel's representation that Aldridge had surrendered to military authorities at a distant place not only would have been readily verifiable from military records but also was made in an effort to assist his client to avert trial *in absentia* and so could not be deemed in any way prejudicial to the interests of the client; moreover, it was, in effect, used by the court, not as evidence, but as an offer of proof, which the court then found insufficient in law. In *United States v. Knight*, 7 M.J. 671 (ACMR 1979), the defense counsel's representation that Knight was incarcerated in the local civilian jail was adopted by the trial counsel and won reversal of the findings and sentence on appeal; thus, it, too, was tantamount to either a stipulation or an offer of proof, but, in any event, it scarcely offered a promising target for appellate attack. Such cases cannot be used to gloss over the obvious distinction between a defense counsel's advocating the client's cause and acting as a prosecution witness.

Another line of cases shows that a military judge may properly inquire of counsel to ensure that reasonable actions have been taken to determine the whereabouts of an absent accused. The purposes of such an inquiry are not to generate evidence but to verify that both counsel have fulfilled their responsibilities, and also to identify or eliminate areas for further investigation (which may or may not lead to the production of additional evidence). Thus, in *Cook*, the defense counsel informed the law officer that he had unsuc-

cessfully tried to locate Cook through a member of his family. There is no indication in the opinion that such information was used as evidence against Cook to find his absence voluntary; it served merely to assure the law officer that the defense counsel had been diligent in trying to locate the client and to imply that further efforts to locate him would probably be futile. Not only are such inquiries proper, but, in view of our appellant's well-established propensity to return to his home in Charleston, South Carolina, as noted above, it would have been looked upon favorably if the military judge in this case had inquired of counsel as to their efforts, if any, to contact him there. We have no difficulty whatever in distinguishing a military judge's use of information provided by counsel for administrative purposes from the use of such information as evidence of a critical fact, *Brown*, for the purpose of overcoming the "presumption against loss of constitutional rights[,]" *Cook.*

█ It should be noted that the defense counsel's transition to the posture of an adverse witness was not of his own doing. Undoubtedly, in making the disclosure he did, he was acting as an officer of the court. Since, as mentioned above, the assertions of counsel are not "evidence," a counsel who makes an officer of the court disclosure should not thereby become a witness for the opposing side, even if the disclosure results in some procedural disadvantage for one's own side. What caused the defense counsel to become an adverse witness in this case was the action of the court in treating the defense counsel's officer of the court disclosure as evidence on the basis of which to resolve adversely to the appellant a matter affecting the appellant's fundamental Fifth and Sixth Amendment rights, to the resolution of which the rules of evidence were fully applicable.

█ Had the proper procedure been followed, the defense counsel would first have been designated an adverse witness. Such action would have necessitated the appointment of a new defense counsel to represent the appellant, at least for that portion of the trial in which the first defense counsel

would be testifying as a prosecution witness; and, absent the appellant's express consent to the first defense counsel's continued representation for the remainder of the trial, we think that the latter's permanent replacement would have been required. *See* Rule 3.7, American Bar Association *Model Rules of Professional Conduct* (1987).

New counsel could have followed several courses of action at that point. First, presumably he would want to get in contact with his client (which, if the appellant was at his home in Charleston, South Carolina, as we suspect, should not have been difficult). He could then have explained the disadvantages of trial *in absentia* and urged the appellant to return. Conversely, the appellant may have affirmatively desired to be tried *in absentia,* in which case a stipulation of fact could have been negotiated which would have enabled the appellant to retain his first defense counsel, if that was what he desired, *cf. United States v. Baca,* 27 M.J. 110 (C.M.A.1988), and would have avoided the unseemliness of a defense counsel's testifying against his own client.

If it came to the point that the first defense counsel was required to testify, appointment of substitute counsel would have protected the appellant's Sixth Amendment rights with respect to such testimony. The second defense counsel could then have cross-examined the first defense counsel with respect to the precise circumstances of the notification: when, where, in what terms, and by what medium it was made; whether it was made personally or through an intermediary; whether it was made privately or in the presence of witnesses who would corroborate or contradict the first defense counsel's testimony; whether it reflected a firm or only a target date; what condition the appellant was in when the notification was made, and whether or not he appeared to understand it; etc. Also, while we most certainly do not attribute any mendacity to the first defense counsel, there may have been certain self-serving aspects to his disclosure which could have been brought out, possi-

bly to the appellant's advantage. If the first defense counsel was responsible for making the notification, it would unquestionably be self-serving to represent that he had carried out his responsibility properly. In addition, if, by making a representation which would allow the trial to take place *in absentia* without further delay, the first defense counsel was helping to reduce case processing times, he might reasonably suppose that a cooperative attitude on his part would be welcomed by his superiors. This is not to say that any of these avenues of cross-examination or impeachment would necessarily have been successful, but only that the appellant had the right to have them explored by independent counsel, if his first defense counsel was being used against him as a prosecution witness.

■■■ In consonance with the foregoing, we hold that error occurred when the military judge considered the defense counsel's officer of the court disclosure as competent evidence on the issue of the court's power to proceed *in absentia*. While we stop short of establishing as an absolute rule that proof that an accused has been advised of the date to which a trial is continued is indispensable to a finding of voluntariness in every conceivable case, it can scarcely be doubted that such is a very highly relevant circumstance; and, at least in this particular case, there is considerably more than just a fair risk that the information provided by the defense counsel played a material part in the military judge's finding that the appellant's absence from the 29 November 1989 session was voluntary. We further hold that the appellant was deprived of his right to counsel when his only defense counsel was used as a prosecution witness without appointment (or valid waiver) of substitute counsel to protect his rights. Neither error may be dismissed as harmless.

Accordingly, the findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judge STRICKLAND concurs.

BYRNE, Chief Judge
(concurring/dissenting):

I concur that the defense counsel did not breach his duty of loyalty to his client, when acting as an officer of the court, he advised the military judge in an R.C.M. 802 Conference, that he had advised his client of the rescheduled trial date. (AOE II). I, however, do not believe it was necessary for the military judge to hold a formal "proceeding of record" to reset a trial date. The unique variables of military trial work, often conducted "on-the-road," at sea, in war zones, etc., with many conflicting trial dates, warrants a more flexible, less rigid approach. This flexible approach is recognized in present military law, and it is directly related to the first assignment of error, *i.e.*, whether the defense counsel's statements in the R.C.M. 802 Conference constituted evidence.

The military judge *could*, and properly did, consider the statement (originally made in an R.C.M. 802 Conference, and elaborated upon in the record of trial, R. 40–41), that counsel informed the accused of the continuance, and then used this information in determining that the accused was voluntarily absent from the remaining portion of his trial.

The Manual for Courts–Martial, United States (1984) permits relaxation of the rules of evidence as to this issue.

Military Rule of Evidence 104(a) states, *inter alia*, that the military judge is not bound by the rules of evidence in making continuance request determinations. R.C.M. 802 Conferences are appropriate "to resolve scheduling difficulties, so that witnesses and members are not necessarily inconvenienced." Discussion, R.C.M. 802. Consequently, the new Manual, unlike the old Manual passage upon which *Barbeau* and the majority rely for their authority, reflects a different perspective as to those matters a military judge may consider without a "trial within a trial." Certainly, a continuance is always a possibility when an accused is not present for trial. In our case, an R.C.M. 802 Conference properly initially considered the matter and then the military judge resolved the issue at trial.

If the prosecution could not show a voluntary absence, the military judge would have continued the case. Consequently, the counsel's unsworn statement, received as an officer of the court, of this nondisputed preliminary issue, could be considered on the notification issue without the elaborate process dictated by the majority. *See United States v. Aldridge*, 16 M.J. 1008 (ACMR 1983).