UNITED STATES, Appellee

v.

DONALD R. HOUGHTALING, Private First Class, et al,
U. S. Army, Appellants
2 USCMA 230, 8 CMR 30

No. 573

Decided February 26, 1953

LT. COL. George M. Thorpe, U. S. Army, for Appellants.

LT. COL. Paul J. Leahy, U. S. Army, LT. COL. Thayer Chapman, U. S. Army, and 1ST LT. Richard L. Brown, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

The four appellants, Houghtaling, Yambrick, Woods, and Storbakken, were convicted by general court-martial, following a joint trial, of the offense of rape, in violation of Article of War 92, 10 U. S. C. § 1564. The findings and non-capital sentences have been approved by the convening authority and affirmed by a board of review. Petition for consideration by this Court was granted, limited to the following issues:

"1. Whether the trial in absentia of the accused Private First Class Gordon A. Storbakken was legal.

"2. Whether the evidence was sufficient to sustain the findings of guilty."

With respect to the first question, the factual background is as follows. The court duly designated ▬▬▬▬ ■ to try accused convened on the morning of May 29, 1951. After opening formalities had been disposed of, the charges were read. At this juncture the Government requested a continuance for the reason that several of its witnesses had failed to appear, which motion was granted forthwith by the law officer. When the court reconvened on June 10, 1951, it appeared that, following notice of the resumed hearing, appellant Storbakken had escaped from confinement sometime during the early hours of that day and was then at large. Defense counsel objected to proceedings against him in his absence—but the objection was overruled. Pleas of the remaining accused to the charge and specification, read on May 29th, were thereupon received. A plea of not guilty was entered for Storbakken. The trial then proceeded, culminating in the convictions here presented for review.

Paragraph 62, "Arraignment," Manual for Courts-Martial, U. S. Army, 1949, provided that:

"The court being organized and both parties ready to proceed, the trial judge advocate will read to the accused the charges and specifications, including the signature of the accuser, and will then ask the accused how he pleads to each charge and specification. This proceeding constitutes the arraignment. *The pleas are not part of the arraignment. . . . .*" [Emphasis supplied]

The emphasized portion of this quotation disposes of Storbakken's argument that he had not been arraigned prior to his escape because the court had not by that time received his plea. Clearly, the arraignment of accused had been completed on the first day of trial, May 29, 1951, which means also, of course, that the legality of the trial must be tested under the 1949 Manual, supra. United States v. Merritt (No. 53), 1 CMR 56, decided November 20, 1951.

Paragraph 10 of the 1949 Manual, supra, also provides:

"The escape of the accused after arraignment and during trial does not terminate the jurisdiction of the court, which may proceed with the trial notwithstanding his absence."

This provision restates a long-settled military rule. Manual for Courts-Martial, U. S. Army, 1917, paragraph 36; Manual for Courts-Martial, U. S. Army, 1921, paragraph 36; Manual for Courts-Martial, U. S. Army, 1928, paragraph 10. No change has been made in the current Manual. Manual for Courts-Martial, United States, 1951, paragraph 11c. It should be noted at the outset that no exception is spelled out in the instance of capital cases, as is the situation in Rule 43, Federal Rules of Criminal Procedure, quoted below:

"The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules. In the prose-

cutions for offenses *not punishable by death,* the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. . . . . " [Emphasis supplied]

In view of the explicit exception set out in Rule 43, supra, we can only conclude that the draftsmen of the 1949 Manual intentionally excluded that limitation, as did the draftsmen of the 1951 Manual. Further we conclude that there was no intention to incorporate the exception inferentially. We read paragraph 10 of the 1949 Manual as expressly permitting trial in absentia of an accused person, who escapes confinement after arraignment, in *all*-cases, capital or otherwise. The problem is whether, in countenancing such trial in a capital case, a constitutional right of the accused, which is binding on the military, has been infringed.

There is no blinking the fact that in point of sheer weight the bulk of civilian authority supports the proposition that one accused of crime may waive his presence at the trial, save *in capital cases.* Most of these judicial statements, however, have been offered gratuitously as dicta in non-capital cases. Escapes in the civilian scene by one on trial for a capital offense are rare, for the manifest reason that civilian defendants in such cases are closely confined and carefully guarded—bail being permitted in but few jurisdictions, and then in rare circumstances only. Moreover, in a number of civilian cases involving the present problem, the accused was actually in the custody of the authorities at all times, so that no tenable excuse for his absence from the trial existed, and no waiver could have been made out with propriety.

The authorities are not unanimous, however. Mississippi has indicated, at least, that there is no sound reason for distinguishing between the effect of an accused's voluntary absence in non-capital and in capital cases. Ford v. State, 170 Miss. 459, 466, 155 So. 220, 222. Kentucky too has flatly refused to countenance such a distinction, criticizing it as illogical. Boreing v. Beard, 226 Ky. 47, 10 S. W. 2d 447, 450.

In the Federal area, the source of our principal guidance, we find no square *holding* of any court that the Constitution prohibits the continuation of proceedings in a capital offense where the accused had escaped from confinement after the opening of the trial. There is, it is true, a dictum reference to this effect in Diaz v. United States, 223 US 442, 455, 56 L ed 500, 505, 32 S Ct 250, where it is said that one accused of a capital crime is regarded as incapable of waiving his right to be present at his trial because he is "usually in custody," and because he "is deemed to suffer the constraint naturally incident to apprehension of the awful penalty that would follow conviction." However, these reasons would not appear to be applicable to one who forcibly escapes from confinement, for he is certainly not in custody, and can hardly be "deemed" to have been greatly restrained by "apprehension of the awful penalty that would follow conviction." That the exception for capital cases may not have been the accepted rule for the Federal courts, in the absence of Rule 43, Federal Rules of Criminal Procedure, is indicated by the following expression of the Court of Appeals for the District of Columbia, found in its opinion in the leading case of Falk v. United States, 15 App DC 446, 458:

". . . The rule to be derived from the authorities is that, in all cases involving less than capital punishment—*for some of the authorities make an exception in regard to that class of cases*—when a trial has once been begun, the flight or escape of the accused person does not preclude the court from proceeding with the cause and receiving the verdict of the jury in the absence of the defendant so caused by his own wrongful act. . . . ." [Emphasis supplied]

The emphasized portion of this statement strikes us as having been the subject of extremely careful and purposive phrasing. On the one hand, it meticulously avoids conveying the

thought that the "capital case" exception is firmly rooted in Federal law. Yet, on the other, it does not state explicitly that it is not a part thereof. It leaves a picture which is, to say the least, not firmly delineated, and from which we conclude that we are free to promulgate for the military a rule compatible with its particular, and peculiar, exigencies, yet consistent with fundamental concepts of justice and essential fairness. Since we do not believe that the Sixth Amendment to the Constitution would prohibit in a Federal civilian court the form of trial in absentia with which we are here concerned, it is unnecessary to decide whether that amendment applies of its own force to the military. See United States v. Zimmerman (No. 261), 6 CMR 12, decided October 6, 1952, and cases there cited.

Indeed we perceive no sort of logical foundation for an exception, in the instance of capital cases, to the general rule that one, who by his own act removes himself from the presence of a court trying him on a criminal charge, thereby waives—or at least forfeits—his right to have all phases of the trial conducted in his presence. Although one's right to be present during his trial is undoubtedly of great importance, the consequences which may follow upon his voluntary and willful absence are clearly the fruit of his own wrongful act no matter what the character of the charge asserted against him. To hold otherwise would be to reward one accused of a capital offense who is ingenious enough to escape from confinement, but to deny the benefit of that reward to his unfortunate brother who has committed a crime only slightly less serious in degree and has also escaped the clutches of the law. We can hardly express the policy underlying the general rule—from which we recognize no military exception—more clearly and with greater forthrightness than did the court in Falk v. United States, supra, at 460, a non-capital case, quoted with approval in Diaz v. United States, supra, at 458:

". . . . The question is one of broad public policy, whether an accused person, placed upon trial for crime and protected by all the safeguards with which the humanity of our present criminal law sedulously surrounds him, can with impunity defy the processes of that law, paralyze the proceedings of courts and juries and turn them into a solemn farce, and ultimately compel society, for its own safety, to restrict the operation of the principle of personal liberty. Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong. And yet this would be precisely what it would do if it permitted an escape from prison, or an absconding from the jurisdiction while at large on bail, during the pendency of a trial before a jury, to operate as a shield . . . :"

Refusal to adopt for the military the "capital case" limitation here urged is likewise commanded by readily apparent factors peculiar to service judicial administration, and unknown to its civilian counterpart. Of necessity military personnel are highly mobile, and on occasion are scattered to the four winds within a matter of hours. In oversea theaters, and particularly in combat areas, witnesses, both military and civilian, are exposed to uncommon hazards which make their assembly for trial difficult always and too often impossible. Certainly the degree of prosecution hardship sharply increases as the time of trial is delayed. The capital offense escapee may thus gain great advantage, which will vary directly with the length of time he is able to prolong his absence. This is, of course, true in all areas of law enforcement, but it is greatly intensified in that of military judicial administration. We discern no reason for impeding—perhaps even defeating—the prosecution of those who choose not to be present for trial, regardless of the offense with which they are charged. This would, we believe, be distinctly in derogation of the just claims of the military society, an interest often disregarded in febrile evaluation of the rights of frequently undeserving individuals.

234

There is no problem of essential "fairness" here, for this is not at all a case in which one was tried in absentia without notice that he was accused of a designated offense, and that he would be tried therefor. Petitioner Storbakken was fully informed that he was to be tried, and was thereby notified that he would have full opportunity to confront the witnesses against him and to present evidence on his own behalf. Of course, he was thus offered the benefit of the other substantial rights which the humanity of the law—military or civilian—affords him. Having flaunted these safeguards provided for his benefit, he would have us reward him for his wrongdoing. We cannot believe that justice requires the end he advocates.

Having determined that there was no error in the continuation of the trial of Storbakken, to and including the findings, in his self-caused absence, it remains to inquire whether there was error in imposing sentence during this absence. It is to be noted in this connection that Rule 43, Federal Rules of Criminal Procedure, quoted supra, implicitly distinguishes between proceeding to verdict during a defendant's absence, on the one hand, and adjudging sentence against him, on the other —and prohibits the latter in any felony case. Cook v. United States, 171 F2d 567 (CA 1st Cir). No such distinction appears—explicitly or implicitly—in paragraph 10 of the 1949 Manual, supra. See also paragraph 11c of the 1951 Manual, supra.

Given the soundness of our preceding analysis and the conclusion that the capital case exception of Rule 43 with respect to trial in absentia has no application to courts-martial, we perceive no convincing reason for concluding that sentence cannot be imposed as well on an accused who has escaped from confinement, and who has been convicted following a trial conducted legally during his absence. Surely, the right to be present at the time of sentencing rests on no firmer foundation than the right to be present at all times during trial. The former, like the latter, may be waived, even in capital cases. We hold that it was waived—or, at least, forfeited—in this case.

This further distinction between the military and civilian jurisdictions cannot fairly be said to be either whimsical or capricious. Good reasons for it exist. In the civilian community there is no rigid rule demanding that a convicted man be sentenced only by the judge who presided over his trial. However, there is no provision in military criminal law procedure for the imposition of any sort of sentence save by the court which tried and convicted the accused. As a practical necessity the court which convicts a man in absentia must have the power to sentence him as well, otherwise the conviction will have gone for naught. It will always be difficult, and usually impossible, ever to reassemble a court-martial—and the longer the delay, the greater the difficulty and threat of impossibility.

III

We turn now to the issue of sufficiency of the evidence to support the convictions. Each of the accused persons, with the exception of Yambrick, admitted to participation, in his turn, with a group of others, in successive acts of sexual intercourse with a middle-aged Korean woman on the night in question, April 14, 1951. Yambrick expressly confessed to rape of the prosecutrix, Won E. Boon, on the same night. The problem has to do with the presence of corroboration of these statements. Given the statements of the accused, together with other facts, are we able to emerge with a total evidentiary picture sufficient to sustain the convictions? The victim, Won E. Boon, testified in great detail as to events on the night in question, establishing that she had been forcibly raped by a group of five American soldiers. Because of darkness, she was unable to observe her assailants sufficiently to identify them thereafter. Appellate defense counsel rely, save as to Yambrick, on the opinion of a dissenting member of the board of review, who was unable to find in the evidence of record sufficient support for the convictions. Indeed,

as to Yambrick, the evidence is beyond cavil. There was no discrepancy whatever between his confession and the corroborative testimony of the prosecutrix. As to him, the evidence of guilt is quite clearly sufficient.

As to the others, however, the contention is made that the evidence failed to establish that the statements of the accused had reference to the acts of intercourse reported to the court by the prosecutrix. Certain items mentioned by the victim in her testimony, but not adverted to by the accused in their statements, are pointed out. We cannot, however, attach great significance to this. Certainly in these respects there is no *discrepancy* between the stories of accused and that of their alleged victim. The statements of the accused were very brief. The fact that they made no reference to certain matters mentioned by the prosecutrix by no means requires a conclusion that accused had not conducted themselves as related by her. A disparity is also asserted in connection with the time at which the conduct charged is said to have taken place. However, as to this matter, we believe that defense counsel, and the dissenting member of the board of review, fail to evaluate the testimony of the prosecutrix and the statements of accused in their proper context. It is to be noted that the accused persons did not state that the acts of intercourse participated in by them took place at 8:00 o'clock in the evening, as attributed to them. Rather, they said that at that hour they set out on their foray into the Korean village. Actually, they said nothing whatever about the hour at which their acts of intercourse transpired. Won E. Boon, the victim, testified that the acts of rape of which she spoke began at *about* 11:00 o'clock p. m. Neither the accused nor the prosecutrix spoke with certainty as to time—and we find no fatal variance in their approximations. Precision as to time in this setting is not a condition to the support of a determination that the acts charged against accused probably took place. Finally, it is said that there was no showing that the accused, in the references to their entry into "a Korean village," were speaking of the village where Won E. Boon resided, Pop-Tong. However, we cannot forget that, when accused's statements were taken by a CID agent a day or so after the incident, their unit was located but a short distance—approximately half a mile—from Pop-Tong. That the latter was the village in question is quite clear to us, as it doubtless was to the court-martial.

Evaluating the evidence as a whole, we find an extensive degree of similarity between the testimony of the prosecutrix and the statements of accused. See United States v. Jarvis (No 94), 1 CMR 217, decided May 6, 1952. We simply cannot say that the evidence offered a reasonable alternative to guilt. United States v. McCrary (No 4) 1 CMR 780, decided November 8, 1951; United States v. O'Neal (No 25), 2 CMR 787, decided February 7, 1952. Accordingly, we find the determination of the triers of fact to be supported by sufficient evidence of record.

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.