**UNITED STATES**

v.

**Daniel L. PEEBLES, 295–50–1750, formerly Private First Class, U. S. Army, formerly assigned to 170th Aviation Company (Aslt Hel), APO San Francisco 96494.**

.CM 423670.

U. S. Army Court of Military Review.

Sentence Adjudged 2 Aug. 1973.

Decided 28 Oct. 1975.

---

Appearances: Appellate counsel for the Accused: CPT Sammy S. Knight, JAGC; LTC Edward S. Adamkewicz, Jr., JAGC; COL Victor A. De Fiori, JAGC. Appellate counsel for the United States: CPT Raymond M. Ripple, JAGC; CPT Gay M. Holmes, JAGC; LTC Ronald M. Holdaway, JAGC.

## OPINION OF THE COURT

JONES, Senior Judge:

This case is before this Court for review for the third time. A synopsis of the prior proceedings will be beneficial in understanding the issues currently pending.

The appellant was initially convicted by a general court-martial in Vietnam in March 1970 of unpremeditated murder, larceny, and assault with a dangerous weapon. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, con-

finement at hard labor for ten years and reduction to the grade of Private (E–1). While incarcerated at the Disciplinary Barracks awaiting review of that conviction, the appellant escaped from confinement. In May 1971 he was tried by general court-martial for the escape and for resisting apprehension, was convicted, and was sentenced to dishonorable discharge, forfeiture of all pay and allowances and confinement at hard labor for fourteen months. The service of the sentence to confinement for the escape interrupted the service of the confinement under the murder conviction.

In July 1971, this Court set aside the action of the convening authority on the murder conviction and ordered a new review and action. After the new review and action was accomplished, this Court again reviewed the case in February 1972, affirming the findings and sentence. In June 1972, the United States Court of Military Appeals reversed the decision of this Court and ordered a rehearing. In the meantime, appellate review of the escape conviction had been completed; the conviction had become final; and the dishonorable discharge adjudged for that offense had been executed.

When the appellant completed serving the sentence to confinement imposed as a result of the escape conviction, he resumed service of the confinement imposed under the murder conviction. He was no longer a member of the military, however, as his discharge had been executed. In June 1972 when the Court of Military Appeals handed down its decision reversing the decision of this Court, on the murder conviction, his confinement status reverted to pretrial confinement.

In September 1972, the convening authority ordered a rehearing on the original charges (murder, larceny, assault) and on 1 November 1972 the first Article 39(a) session of the rehearing was held. The appellant was arraigned at that time. After arraignment the defense counsel moved to dismiss all charges and specifications for lack of jurisdiction over the person of ac-

cused, a civilian. The trial judge granted the motion but the convening authority, acting under Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862, directed the trial judge to reconsider his ruling. On 30 November 1972 at a second Article 39(a) session, the trial judge reconsidered his ruling, acceded to the views of the convening authority, and denied the motion to dismiss. To give the trial counsel time to obtain the necessary witnesses from Vietnam and to allow the appellant an opportunity to test the military judge's ruling on the jurisdictional question by means of an extraordinary writ to the Court of Military Appeals, the next session of the trial was set for 16 January 1973. Further proceedings were delayed, however, until the Court of Military Appeals acted on the extraordinary writ.

On 11 May 1973, that Court determined that the Army had jurisdiction to proceed with the rehearing; that appellant's status as a member of the armed forces subject to trial by court-martial was fixed at the time proceedings initially began; that jurisdiction once validly attached, continued for the rehearing; and that jurisdiction was not terminated by the intervening discharge. *Peebles v. Froehlke*, 22 U.S.C.M.A. 266, 46 C.M.R. 266 (1973).

The rehearing next reconvened on 1 August 1973 pursuant to a court-martial convening order different from the one to which it was referred in September 1972. The military judge, trial counsel, and defense counsel were the same but the members were different. The new order had a "pick-up" clause for all cases referred on the prior order.

The appellant was absent when the court reconvened on 1 August 1973 and the defense counsel objected to further proceedings without his presence before a "different" court. After hearing evidence and arguments, the military judge found that the appellant was voluntarily absent from the trial, after being notified of the trial date. The judge directed the trial to continue. Again a conviction resulted[1] and again the case is before us for review.

1. Appellant was convicted of unpremeditated murder and assault with a dangerous weapon (5 specifications). The larceny charge was dismissed by the military judge. The court sen-

## I

The first question we are confronted with is one of jurisdiction, viz., did the court as constituted by the new convening order[2] have jurisdiction to proceed with a rehearing in absentia.

Paragraph 11c, Manual for Courts-Martial, United States, 1969 (Revised edition), provides for trials in absentia as follows:

"The accused's voluntary and unauthorized absence after the trial has commenced in his presence and he has been arraigned does not terminate the jurisdiction of the court, which may proceed with the trial to findings and sentence notwithstanding his absence. . . . "

It is not disputed that the appellant was present when the rehearing[3] commenced and that he was arraigned at that session. What is disputed is:

(a) whether the appellant's absence was voluntary.

(b) whether the appellant's absence was unauthorized.

(c) whether the "court" which proceeded with the rehearing to findings and sentence was the same "court" before which appellant was arraigned.

We shall deal with these three questions separately.

Paragraph 11c of the *Manual,* quoted above, is in accord with the general rule that the absence of an accused from his trial must be voluntary before he will be considered to have waived his constitutional right to be present. *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912); *United States v. Cook,* 20 U.S.C. M.A. 504, 43 C.M.R. 344 (1971); *United States v. Houghtaling,* 2 U.S.C.M.A. 230, 8 C.M.R. 30 (1953). There is no general agreement, however, on what is necessary for a showing of voluntary absence. *See United States v. Allison,* 47 C.M.R. 968 (A.C.M.R.1973). We concluded in *Allison* and we reiterate here that it is sufficient to show that the accused knew the proceedings were to be resumed, knew of his right to be present, and was absent of his own volition. If there is any indication that the absence may be other than voluntary, as in *United States v. Cook, supra,* where there was a substantial question of the accused's mental responsibility, the judge must make an inquiry into the issue of voluntariness. Otherwise, if an accused is free on his own recognizance awaiting trial, the burden falls upon him to come forward with evidence indicating he was not voluntarily absent. *See United States v. Day,* 48 C.M.R. 627 (N.C.M.R.1974); *United States v. Norsian,* 47 C.M.R. 209 (N.C.M.R.1973); *United States v. Hall,* 44 C.M.R. 656 (A.C.M.R. 1971). The reason for this rule was well stated in *United States v. Parker,* 91 F.Supp. 996 (M.D.N.C.1950), *aff'd* 184 F.2d 488 (4th Cir. 1950):

"It would seem that when he is in court at the time of its recess and he departs from the place of the court and fails to return that his absence is voluntary in a legal sense. It would be utterly impractical for the court to hold up jurors and litigants to await the pleasure of a defendant to come into court. When he leaves the courtroom he goes at his peril; and if he is not present when it reconvenes, it is incumbent upon him to make known to the court any excuse he has for his failure to be present . . . ."

In the instant case the military judge after making an extensive inquiry into the

---

tenced the appellant to confinement at hard labor for ten years. The convening authority approved the sentence. On 8 April 1975, the Secretary of the Army reduced the confinement to eight years.

**2.** The appellant was arraigned in the rehearing at an Article 39(a) session before a court-martial convened by Court-Martial Convening Order # 10, dated 1 September 1972, but subse- quent Article 39(a) sessions and the trial on the merits were before a court-martial convened by Court-Martial Convening Order # 23, dated 26 July 1973.

**3.** Although the term "trial" is used in para- graph 11c, MCM, 1969 (Rev.), a rehearing is a trial within the meaning and purpose of this subparagraph. *United States v. Staten,* 21 U.S. C.M.A. 493, 45 C.M.R. 267 (1972).

question of voluntariness of the absence, determined that the appellant's absence from the trial was voluntary. An outline of the facts developed in that inquiry is appropriate.

Appellant's rehearing was delayed approximately eight months beyond the date originally set for the rehearing so that he might seek action on an extraordinary writ in the United States Court of Military Appeals. During this period appellant was released from confinement at his request and allowed to go home. There was no restraint on his travels or activities but appellant understood he would have to return for any continuation of the trial and that he would be notified through his counsel. His counsel had in fact asked that all communications with appellant be through him. There is no indication in the record that the long delay in resuming the trial in any way affected appellant's knowledge of the actual trial date or his knowledge that he bore a responsibility to maintain communication with his counsel and thus with the court concerning his whereabouts.

The prosecution did not show that the appellant had actual knowledge of the trial date but it enumerated the many, various efforts that were made to transmit such notice. The trial counsel gave notice to defense counsel; he mailed a notice to appellant's home address; he contacted appellant's last employer and the police chief in his home town;[4] and he attempted to contact appellant's relatives and friends.

■ We believe the military judge ruled correctly on the above facts that appellant's absence was voluntary. Appellant had an obligation as well as a right to be present, *United States v. Cureton,* 302 F.Supp. 1065 (D.D.C.1968), aff'd 134 U.S.App.D.C. 144, 413 F.2d 418 (1969), and the evidence was

overwhelming that he did not meet this obligation—that he was voluntarily absent.

■ Turning next to the question of whether appellant's absence was "unauthorized" we find ourselves again confronted with a paucity of authority. This requirement that the absence be unauthorized is peculiarly military and pertains to the classification of an absence of a member of the armed forces. There is no similar requirement in the Federal rule upon which paragraph 11c, MCM, 1969 (Rev), is based,[5] and the requirement in the *Manual* is inappropriate when the accused is a civilian. It is sufficient that appellant was told and understood that he was to be present at the trial, and that no one in authority in the military told him he did not have to attend.

■ We now turn to the final question on the jurisdictional issue: Was the court which proceeded with the rehearing to findings and sentence the same court before which appellant was arraigned? The appellant maintains that the court which proceeded with the rehearing after the eight-month interlude was a different court and was thus without jurisdiction to proceed. He contends it was a different court because it was convened by a different order and was composed of different members. In support of his position the appellant calls our attention to *United States v. Staten,* 21 U.S.C.M.A. 493, 45 C.M.R. 267 (1972), and *United States v. Johnson,* 44 C.M.R. 797 (A.C.M.R.1971). In *Staten* the Court of Military Appeals declined to invoke waiver of the right to be present at trial where the accused had voluntarily absented himself between the end of the original trial and the start of a rehearing on the sentence. The Court stated that as a minimum the accused must have been present at the com-

---

4. Appellant sought to relitigate at this level by way of affidavit a factual question decided at trial regarding the trial counsel's telephone call to the police chief of appellant's home town to notify the appellant of the date the hearing was to resume. We declined to consider the affidavit. *United States v. Bethea,* 22 U.S.C.M.A. 223, 46 C.M.R. 223 (1973). However, the affidavit of the police chief, if correct, would indi-

cate that trial counsel lied to the court. Such a serious allegation of misconduct by trial counsel could amount to a fraud on the court. As such, a petition for new trial pursuant to Article 73, Uniform Code of Military Justice, would be the appropriate procedure to follow.

5. Federal Rules of Criminal Procedure, Rule 43, 18 U.S.C.

mencement of the rehearing. The Court did not discuss or even mention differences in personnel or convening orders between the original trial and the rehearing.[6]

In *Johnson,* this Court held that a court-martial convened by a different order and composed of different members and different counsel from the court-martial before which the accused had been arraigned at an earlier Article 39(a) session was without jurisdiction to try the absent accused. In strictly construing paragraph 11c, MCM, 1969 (Rev), this Court impliedly concluded that the "court" which may continue with the trial of an absent accused meant the same members, the same counsel, the same judge, and the same order number. This was so, the Court said, because of the special nature of a court-martial as a "creature of statute" with authority to act only when authorized to do so in conformity with a statute. *United States v. Robinson,* 13 U.S. C.M.A. 674, 33 C.M.R. 206 (1963).

We agree with the principle regarding the special nature of courts-martial as announced in the United States Supreme Court decisions cited in *Robinson,* but we do not agree that the principle mandates such a restrictive interpretation of the term "court" as that term is used in paragraph 11c, MCM, 1969 (Rev). In our opinion, this Court in *Johnson* and *Staten*[7] gave too narrow a meaning to the term. Too much weight was given to the number of the court-martial convening order and to the identity of members, and not enough emphasis was placed on the purpose and functions of the tribunal at the earlier stages of the proceeding.[8]

With the advent of the Military Justice Act of 1968,[9] the members are not required to be present at the Article 39(a) sessions, including the arraignment. The functions of the "court" in those sessions may be performed by the military judge, rather than by the members or by the judge and members jointly. In the instant case the members had not been present; they had not been subject to challenge; and they had performed no judicial function. The functions of the "court" had been performed solely by the military judge. He held the arraignment, and the purpose of that procedure—to provide notice to the accused of the charges against him—had been fulfilled. Thus, in our opinion, the "court" as that term is used in paragraph 11c, MCM, 1969 (Rev), for the purpose of continuation of a trial in absentia, was the military judge, as he had performed all judicial functions and none had been performed by the members. We find it significant, and supportive of our interpretation of paragraph 11c, MCM, 1969 (Rev), that Judge Darden in his Court of Military Appeals opinion in *Staten* did not base his decision on the "different court" theory adopted by this Court in *Johnson* and *Staten.* In effect, Judge Darden rejected that theory of the case. We believe, therefore, that this Court's opinions in those two cases no longer reflect the correct interpretation of the term "court" in that provision of the *Manual.*

In addition to the different legal interpretation of paragraph 11c, MCM, 1969 (Rev), there are several factual differences between this case and the cases of *Johnson* and *Staten,* which make for a different result. In *Staten* the accused was never present at the commencement of the proceedings on rehearing whereas here the appellant was present and was arraigned. In *Johnson* the counsel were changed, and the court members were changed *after* the accused, knowing the identity of those de-

---

6. The military judge and defense counsel were the same at the rehearing as at the original trial but a new convening order with a different number, a different trial counsel who actually prosecuted the case, and different members was used at the rehearing.

7. The Court of Military Review opinion in *United States v. Staten* is reported at 45 C.M.R. 422.

8. For discussions of the roles and functions of the military judge and the court members prior to assembly, see *United States v. Smith,* 23 U.S.C.M.A. 555, 50 C.M.R. 774, 3 M.J. 490 (1975); *United States v. Hamlin,* 49 C.M.R. 18 (A.C.M.R.1975).

9. Act of 24 October 1968 (82 Stat. 1335).

tailed members, had indicated his desire to be tried by a court with members. In this case the counsel were not changed and the appellant had not indicated any desire to be tried by the members detailed on the initial order.

■ Thus for both legal and factual reasons, we reach a conclusion different from that reached in *Johnson* and *Staten*. We conclude that appellant by his voluntary absence from trial after he had been present when the trial commenced and had been arraigned, and knowing that the proceeding would be resumed and that he had the right to be present, waived his right to be present. The court-martial therefore had jurisdiction to proceed in his absence. *United States v. Houghtaling, supra; cf. United States v. Staten, supra.*

## II

■ Surmounting the jurisdictional question, we turn now to the question of sufficiency of the evidence to support the findings and sentence. The appellant maintains the evidence is insufficient to establish appellant's guilt beyond a reasonable doubt whereas the Government argues that the evidence is legally sufficient. Both agree that the question depends to a great extent on the credibility of the Government's witnesses.

The incident that is the subject of these charges is the killing of one Vietnamese and the wounding of five others in two grenade explosions. The incident occurred at about 1600 hours on the afternoon of 9 January 1970 at a garage in Pleiku, Vietnam, where the victims worked.

To establish its case the prosecution presented three witnesses who testified in person and one witness, a Vietnamese garage owner, who testified by means of his former testimony at the previous trial. The witnesses who testified in person were the Vietnamese doctor who had treated the victims, and two former members of the appellant's unit in Vietnam. The principal witness against the appellant was one of the former members of appellant's unit, Prisoner Beard who had been a motor sergeant

and supervisor of the appellant. Beard testified under a grant of immunity. At the time of trial he had served approximately 3½ years of a general court-martial sentence for robbery, larceny and "fragging." He was released from the Disciplinary Barracks a short time after the appellant's trial. His testimony, therefore, must be subjected to close scrutiny.

Beard's testimony was equivocal and his memory was hazy but in our opinion this was due more to the passage of time since the incident and to his reluctance to testify against a fellow soldier and fellow inmate at the Disciplinary Barracks than to a desire or tendency to lie or to change his story to please whoever happened to be questioning him at the moment. There was no indication that Beard was biased against the appellant. To the contrary, his faulty memory and his inability to be specific worked to the appellant's benefit. Although granted immunity, Beard's release from the Disciplinary Barracks did not depend upon the prosecution obtaining a conviction or upon his giving testimony in a certain way. He was required only to testify truthfully and in our opinion he did so.

Notwithstanding the lack of an eyewitness to the throwing of the grenades, the bits and pieces of evidence furnished by the various witnesses together with the reasonable inferences drawn therefrom presented a strong circumstantial case against the appellant. The prosecution established that on the morning of an undetermined date in January 1970, but sometime about the 9th, the appellant and a fellow soldier went to a garage in Pleiku, Vietnam, to try to sell a stolen jeep. The garage owner, recognizing the jeep as belonging to a Vietnamese Army major, put them off by asking them to return about noon of the same day. When the appellant and his friend returned, the Vietnamese major was present to claim his vehicle. When confronted, the appellant and his friend fled the garage, firing shots at the Vietnamese as they left. About 1600 hours of the same day the appellant was riding in the back of an Army truck which was returning from Pleiku

with three Vietnamese women who were to provide entertainment later that evening for the soldiers in appellant's unit. Beard was driving the truck. The route they were following took them by the Vietnamese garage. Just after they passed the garage, Beard heard two explosions. Later that same evening during a party the appellant stated to Beard that he had thrown two grenades into the building. Five Vietnamese workers were injured and one was killed by the exploding grenades.

The court members, after hearing and observing the witnesses, were convinced beyond a reasonable doubt of the appellant's guilt. We too, after reading and studying the record, are convinced beyond a reasonable doubt that the evidence together with the inferences drawn therefrom establishes the appellant's guilt beyond a reasonable doubt.[10]

### III

The final question to be addressed concerns a possible conflict of interest of appellant's individual defense counsel. Individual defense counsel had advised the principal prosecution witness, Beard, previously on legal assistance matters and on a potential criminal matter—a possible parole violation. Appellant was aware of this representation as he and Beard were cellmates and close friends, and it was Beard who suggested to the appellant that he request the individual defense counsel to represent him. At that time, however, Beard was not expected to testify against the appellant. It was only after appellant had absented himself that Beard was granted immunity and was forced to testify. Thus appellant had no opportunity to express a desire for individual defense counsel to continue to represent him after he, appellant, was aware that individual defense counsel would have to cross-examine Beard.

The appellant maintains the military judge erred by permitting individual defense counsel to proceed with appellant's case without appellant's express consent, once the possible conflict of interest in cross-examining Beard arose. We disagree. First, prior representation by defense counsel of a prosecution witness does not of itself deprive an accused of the effective assistance of counsel. *United States v. Thornton,* 8 U.S.C.M.A. 57, 23 C.M.R. 281 (1957); *United States v. Lovett,* 7 U.S.C.M.A. 704, 23 C.M.R. 168 (1957). The important question is whether such relationship prejudiced counsel's efforts on behalf of his accused. As the Court of Military Appeals indicated in *Thornton* and *Lovett,* that can be determined by an inquiry.

In the instant case the military judge made an extensive inquiry into the relationship between the individual defense counsel and Beard and into whether the individual defense counsel would be impeded in his cross-examination and impeachment of Beard. The military judge found no possible conflict of interest and no impediment to individual defense counsel's total loyalty to this appellant. Individual defense counsel's subsequent conduct of appellant's defense and particularly his skillful cross-examination of Beard, demonstrated the adequacy of his representation. We find nothing to indicate in any way that individual defense counsel did less for the appellant as a result of his prior representation of Beard. *United States v. Thornton, supra.* There was not even an "appearance of evil" and representation was adequate in all respects.

The remaining assignments of error have been considered but do not warrant discussion.

10. The staff judge advocate concluded that the evidence of record was not sufficient to establish appellant's guilt beyond a reasonable doubt. He therefore recommended in his post-trial review that the convening authority disapprove the findings and sentence. The convening authority, after studying the record and the staff judge advocate's review and after listening to an oral argument presented to him by trial defense counsel, concluded the evidence was sufficient to establish appellant's guilt beyond a reasonable doubt. He approved the findings and sentence and in a letter transmitting the record of trial explained the reasons why his action differed from the recommendation of the staff judge advocate.

The findings of guilty and the sentence are affirmed.

Chief Judge SNEEDEN and Senior Judge CARNE concur.