**UNITED STATES, Appellee,**

v.

**Cameron W. SHARP, Lithographer Seaman U.S. Navy, Appellant.**

**No. 67,967.**
**CMR 90 1517.**

U.S. Court of Military Appeals.

Argued March 3, 1993.

Decided Sept. 27, 1993.

For Appellant: *Lieutenant James A. Douglas,* JAGC, USNR (argued); *Lieutenant James R. Crisfield, Jr.,* JAGC, USNR (on brief); *Lieutenant Commander Richard D. Zeigler,* JAGC, USNR.

For Appellee: *Major Laura L. Scudder,* USMC (argued); *Colonel T.G. Hess,* USMC, and *Commander W.F. Shields,* JAGC, USN (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, appellant was found guilty by a general court-martial with members of one specification each of conspiracy to distribute cocaine and of conspiracy to distribute a substance represented as cocaine; two specifications of distributing cocaine; and one specification of attempting to distribute cocaine, in violation of Articles 81, 112a, and 80, Uniform Code of Military Justice, 10 USC §§ 881, 912a, and 880, respectively. He was sentenced to confinement for 15 years, total forfeitures, reduction to the lowest enlisted grade, a fine of $5,000 or 2 years' additional confinement if he should fail to pay the fine, and a dishonorable discharge. The convening authority reduced the confinement to 10 years, and the Court of Military Review affirmed the findings and the approved sentence in an unpublished opinion dated January 31, 1992. We granted review of the following issues:

## I

WHETHER APPELLANT'S TRIAL IN ABSENTIA WAS PROPER WHERE THE GOVERNMENT FAILED TO ESTABLISH THAT APPELLANT WAS GIVEN NOTICE OF THE TRIAL DATE.

## II

WHETHER A TRIAL SHOULD BE CONTINUED, UPON DEFENSE REQUEST, WHERE THE ACCUSED IS NOT AVAILABLE TO ASSIST IN HIS OWN DEFENSE AND TRIAL DEFENSE COUNSEL STATES THAT HE IS UNPREPARED DUE TO HIS RELIANCE UPON A NEGOTIATED PRETRIAL AGREEMENT THAT, DUE TO THE ACCUSED'S ABSENCE, IS NO LONGER IN EFFECT.

We hold that appellant's trial in absentia was proper and that the military judge did not abuse his discretion in denying defense counsel's request for a continuance.

FACTS

Appellant was arraigned on November 27, 1989. After his arraignment, he was released and "granted leave over the Christmas and New Year holidays." The court below found that

> it was clear from the discussion during the proceedings on 27 November 1989 that the next date for trial was set for 4 January 1990. Albeit the military judge did not state directly that the court was to reconvene on that date, but based on the request of the appellant's civilian counsel for a continuance until the 4th or 5th of January, the military judge's later statement that it would be prudent to have another session or phone conference "prior to the 4th of January" clearly indicates that that was the date the trial would resume.

Unpub. op. at 2.

The Court of Military Review noted that neither "counsel sought a more definite" date and that "appellant had not returned" from his holiday leave "by the time the trial actually began on February 1, 1990." Unpub. op. at 2.

At a session under Article 39(a), UCMJ, 10 USC § 839(a), on January 4, 1990, the Government introduced evidence that appellant went on leave on December 22, 1989, and was due to return on January 2, 1990. He had not been granted an extension of his return date and had not appeared at his unit for duty. Appellant's individual defense counsel accepted the prosecution's proffer that efforts were made to find appellant at various locations in the local community. Defense counsel requested a continuance, indicating that, while he wanted preparation time, the thrust of his request concerned finding appellant: "The court must consider all factors, and one factor I think is very significant is the fact that he was heading home to see his mother and he never got there. And I am quite concerned that something actually did happen to him." Defense counsel requested a 1–month continuance until January 31 or February 1 or 2, 1990.

The military judge granted a continuance until January 31, 1990.

At an Article 39(a) session on February 1, 1990, appellant was still missing. Defense counsel requested a second continuance, this time to prepare, since appellant would be unable to plead guilty as planned, due to his absence. Defense counsel acknowledged that he (counsel) was present at the investigation under Article 32, UCMJ, 10 USC § 832, and had interviewed the key government witnesses; however, his chief reason for requesting the continuance was to talk to appellant. Finally, defense counsel also acknowledged that as long as appellant remained away, he could not be prepared for trial. The military judge denied the motion for the second continuance.

## DISCUSSION

### I

The first granted issue concerns existence of notice of the trial date. RCM 804(b)(1), Manual for Courts–Martial, United States, 1984, provides:

> The further progress of the trial to and including the return of the findings and, if necessary, determination of a sentence

shall not be prevented and the accused shall be considered to have waived the right to be present whenever an accused, initially present:

> (1) Is voluntarily absent after arraignment (whether or not informed by the military judge of the obligation to remain during the trial); ..[1]

Fed.R.Crim.P. 43(b)[2] is similar to paragraph 11c, Manual for Courts–Martial, United States, 1969 (Revised edition),[3] the precursor to RCM 804(b)(1).

### A

■ The initial question we must answer is whether notice to appellant of the exact trial date is a prerequisite to trying appellant in absentia. We answer this question in the negative. Ordinarily, notice of the exact trial date would be desirable but is not a prerequisite for a trial in absentia. There is no requirement that appellant be warned that he has a right to be present and that the trial might continue in his absence. *Taylor v. United States*, 414 U.S. 17, 19, 94 S.Ct. 194, 194, 38 L.Ed.2d 174 (1973).

In *United States v. Houghtaling*, 2 USCMA 230, 8 CMR 30 (1953), a capital case, a court convened on May 29,

---

1. The Discussion to RCM 804(b) states:

 "Voluntary absence" means voluntary absence from trial. For an absence from court-martial proceedings to be voluntary, the accused must have known of the scheduled proceedings and intentionally missed them. For example, although an accused servicemember might voluntarily be absent without authority, this would not justify proceeding with a court-martial in the accused's absence unless the accused was aware that the court-martial would be held during the period of the absence.

 \* \* \*

 The prosecution has the burden to establish by a preponderance of the evidence that the accused's absence from trial is voluntary. Voluntariness may not be presumed, but it may be inferred, depending on the circumstances. For example, it may be inferred, in the absence of evidence to the contrary, that an accused who was present when the trial recessed and who knew when the proceedings were scheduled to resume, but who nonetheless is not present when court reconvenes at the designated time, is absent voluntarily.

2. This rule states:
 The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,
 (1) is voluntarily absent *after the trial has commenced* (whether or not the defendant has been informed by the court of the obligation to remain during the trial)....
 (Emphasis added.)

3. This paragraph provided:
 The accused's voluntary and unauthorized absence *after the trial has commenced* in his presence and he has been arraigned does not terminate the jurisdiction of the court, which may proceed with the trial to findings and sentence notwithstanding his absence. In such a case the accused, by his wrongful act, forfeits his right of confrontation.
 (Emphasis added.)

1951, to try appellant. After the charges were read, the Government requested a continuance because several witnesses had failed to appear. The law officer (predecessor to the military judge) granted the continuance. Upon reconvening the court on June 10, 1951, "it appeared that, following notice of the resumed hearing [at an unspecified time], [one] appellant ... had escaped from confinement....Defense counsel objected to proceedings against him in his absence—but the objection was overruled. Pleas of the remaining accused to the charge and specification, read on May 29, were thereupon received." *Id.* at 232, 8 CMR at 32. This Court held that there was no violation of appellant's rights because appellant "was fully informed that he was to be tried, and was thereby notified that he would have full opportunity to confront the witnesses against him...." *Id.* at 235, 8 CMR at 35. *See also United States v. Houtchens*, 926 F.2d 824 (9th Cir.1991); *United States v. Sanchez*, 790 F.2d 245, 249 (2d Cir. 1986).

As Judge Brosman noted in *Houghtaling*:

Although one's right to be present during his trial is undoubtedly of great importance, the consequences which may follow upon his voluntary and willful absence are clearly the fruit of his own wrongful act no matter what the character of the charge asserted against him. To hold otherwise would be to reward one accused of a capital offense who is ingenious enough to escape from confinement, but to deny the benefit of that reward to his unfortunate brother who has committed a crime only slightly less serious in degree and has also escaped the clutches of the law. We can hardly express the policy underlying the general rule—from which we recognize no military exception—more clearly and with greater forthrightness than did the court in *Falk v. United States*, [15 App. DC 446] at 460 [1834], a non-capital case, quoted with approval in *Diaz v. United States*, [223 U.S. 442] at 458, [32 S.Ct. 250, 56 L.Ed. 500]:

".... The question is one of broad public policy, whether an accused person, placed upon trial for crime and protected by all the safeguards with which the humanity of our present criminal law sedulously surrounds him, can with impunity defy the processes of that law, paralyze the proceedings of courts and juries and turn them into a solemn farce, and ultimately compel society, for its own safety, to restrict the operation of the principle of personal liberty. Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong. And yet this would be precisely what it would do if it permitted an escape from prison, or an absconding from the jurisdiction while at large on bail, during the pendency of a trial before a jury, to operate as a shield...."

2 USCMA at 234, 8 CMR at 34.

The rationale for this rule is stated in *Houghtaling* as follows:

Of necessity military personnel are highly mobile, and on occasion are scattered to the four winds within a matter of hours. In oversea theaters, and particularly in combat areas, witnesses, both military and civilian, are exposed to uncommon hazards which make their assembly for trial difficult always and too often impossible. Certainly the degree of prosecution hardship sharply increases as the time of trial is delayed. The capital offense escapee may thus gain great advantage, which will vary directly with the length of time he is able to prolong his absence. This is, of course, true in all areas of law enforcement, but it is greatly intensified in that of military judicial administration. We discern no reason for impeding—perhaps even defeating—the prosecution of those who choose not to be present for trial, regardless of the offense with which they are charged. This would, we believe, be distinctly in derogation of the just claims of the military society, an interest often disregard-

ed in febrile evaluation of the rights of frequently undeserving individuals.

*Id.* at 234, 8 CMR at 34.

The factual situation in *United States v. Peebles*, 3 MJ 177 (CMA 1977), cited by the defense, is entirely different from that case. In *Peebles* the Court held that an accused who fails to receive actual notice of the trial date, some 8 months after the case had been continued for an unknown period, could not be tried *in absentia.*

In a recent case, *Crosby v. United States*, — U.S. —, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993), the Supreme Court held that a defendant who was not present at the beginning of the trial could not be tried *in absentia.* This holding is based on Fed. R.Crim.P. 43, which provides that "[t]he defendant shall be present ... at every stage of the trial ... *except*" when a defendant who was "initially present, ... is voluntarily absent after the trial has commenced...." (Emphasis added.) Justice Blackmun, in writing for the Court, noted that Fed.R.Crim.P. 43

> treats midtrial flight as a knowing and voluntary waiver of the right to be present. Whether or not the right constitutionally may be waived in other circumstances—and we express no opinion here on that subject—the defendant's initial presence serves to assure that any waiver is indeed knowing.... Moreover, a rule that allows an ongoing trial to continue when a defendant disappears deprives the defendant of the option of gambling on an acquittal knowing that he can terminate the trial if it seems the verdict will go against him—an option that might otherwise appear preferable to the costly, perhaps unnecessary, path of becoming a fugitive from the outset.

— U.S. at — - —, 113 S.Ct. at 752–53.

The language of Fed.R.Crim.P. 43(b)(1)— "after the trial has commenced"—did appear in paragraph 11*c*, 1969 Manual, *supra,* but was deleted in RCM 804(b)(1). Since *Crosby* was based on interpretation of Fed.R.Crim.P. 43, it is not controlling here. Accordingly, under RCM 804, an accused may be tried *in absentia* when there is a voluntary absence after arraignment.

**B**

█ The second question we must consider is whether appellant's absence was voluntary. "Federal appellate courts have held that the defense has the burden of going forward and offering evidence to refute the inference that the absence was voluntary." *United States v. Abilar*, 14 MJ 733, 735 (AFCMR 1982), *pet. denied*, 15 MJ 324 (1983). We agree. Under the facts of this case we conclude that the defense did not meet this burden and thereby did not "refute the inference" of a voluntary absence. *Cf. United States v. Cook*, 20 USCMA 504, 43 CMR 344 (1971).

For the foregoing reasons we hold that appellant's trial in absentia was proper.

**II**

The second granted issue concerns whether the military judge should have granted a continuance as requested by the defense. Article 40, UCMJ, 10 USC § 840, provides: "The military judge ... may, for reasonable cause, grant a continuance to any party for such time, and as often, as may appear to be just." RCM 906(b)(1) further provides that only a judge may grant a continuance. The rule as fleshed out in the Discussion to RCM 906(b)(1) is as follows:

> The military judge should, upon a showing of reasonable cause, grant a continuance to any party for as long and as often as is just. Whether a request for a continuance should be granted is a matter within the discretion of the military judge.

(Citation omitted.)

█ Granting a continuance is within the discretion of the military judge, and a denial will be reversed only for an abuse of discretion. *See, e.g., United States v. Thomas*, 22 MJ 57, 59 (CMA 1986).

We are not unsympathetic to the dilemma faced by defense counsel here. As the United States District Court in *United*

**38**

*States v. Zavala–Serra,* 666 F.Supp. 1432, 1437 (D. Hawaii 1987), stated:

> This Court is very sympathetic to defense counsel's expressed concerns about trying this case in the absence of his client. Nevertheless, this Court believes that defense counsel is as well-prepared as he could ever be under the present circumstances. Defense counsel has had the Government's witness/exhibit lists, [and] copies of the Government's documentary exhibits, ... for over a month.... Defense counsel herein faces the same difficulty as [any other defense attorney whose client is absent].... [Appellant] brought this upon himself by failing to appear for his trial.

 In deciding whether to grant a continuance, the military judge must of necessity balance the public interest with the right of the accused to be present. Here, the judge had already granted one continuance when appellant failed to appear for a proceeding for which he had been given notice. The essence of defense counsel's request for a second continuance was to afford him time to talk with appellant in order to better prepare for trial. However, defense counsel was present at the Article 32 investigation and had interviewed the key government witnesses. Further, appellant's absence was of his own making. Any further delay could have resulted in unavailability of witnesses or diminution of their memories. On balance, we conclude that the military judge did not abuse his discretion in failing to grant another continuance.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

---

Judges COX and GIERKE concur.

WISS, Judge (concurring in part and in the result):

I concur in Part II of the majority opinion, but I write separately to express my rationale for concurring in the disposition of Issue I.

RCM 804(b), Manual for Courts–Martial, United States, 1984, provides that, once an accused has been arraigned, the trial may proceed and the accused "shall be considered to have waived the right to be present whenever" such an accused "[i]s voluntarily absent after arraignment (whether or not informed by the military judge of the obligation to remain during the trial)...." There is no suggestion here that appellant's absence was involuntary, so the literal requirement of the rule is met.[1]

Nonetheless, a constitutional issue lingers beneath the surface of this rule that the majority does not, in my view, adequately address. According to *Crosby v. United States,* — U.S. —, —, 113 S.Ct. 748, 751, 122 L.Ed.2d 25 (1993), the Supreme Court, in *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912), "authorized a limited exception to the general rule" at common law that no felony trial may occur in absentia, "an exception that was codified eventually in [Fed.R.Crim.P.] 43(b)"—an exception for a case in which, at the time of the initiation of the absence, the trial had "already commenced." In *Crosby,* decided earlier this Term, the Supreme Court pointed out that *Diaz,* like the case then at bar, involved midtrial flight, as opposed to pretrial flight, and treated "midtrial flight as a *knowing and voluntary waiver* of the right to be present." — U.S. at —, 113 S.Ct. at 752 (emphasis added). Thus, it is clear to me that the Supreme Court will constitutionally require that any purported waiver of the

---

1. I notice that the Discussion that follows RCM 804(b) states:

 The prosecution has the burden to establish by a preponderance of the evidence that the accused's absence from trial is voluntary. Voluntariness may not be presumed, but it may be inferred, depending on the circumstances'....

I have some concern that the majority opinion—speaking as it does in terms of a defense "burden of going forward" and concluding as it does "that the defense" here "did not meet this burden," 38 MJ at 37—might mislead a reader into thinking that voluntariness may be presumed. *But see* reference to Discussion in this note.

right to be present at trial be both voluntary, as RCM 804 requires, and knowing.[2]

It would seem that a knowing waiver in this regard, at a minimum, would require some notice to the accused of at least the general point at which the proceedings would resume (at least if the hiatus is to be lengthy), *see United States v. Peebles*, 3 MJ 177 (CMA 1977), and some notice that, even in his absence, the proceedings would continue.[3] I agree with the majority's discussion of this first element, but I am concerned that the majority does not acknowledge at all the second element.

As to midtrial flight, the *Crosby* Court reasoned: "It is unlikely ... 'that a defendant who flees from a courtroom in the midst of a trial—where judge, jury, witnesses and lawyers are present and ready to continue—would not know that as a consequence the trial could continue in his absence.' " —— U.S. at ——, 113 S.Ct. at 752, quoting *United States v. Taylor*, 478 F.2d 689, 691 (1st Cir.1973), quoted with approval in *Taylor v. United States*, 414 U.S. 17, 20, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973). The situation arguably is much different where the flight is not midtrial in the sense described by the Supreme Court, and where the record is otherwise devoid of any indication that the absent accused knew that, even in his absence, trial would proceed.[4]

As the Chief Judge points out, this Court as long ago as *United States v. Houghtaling*, 2 USCMA 230, 8 CMR 30 (1953), has viewed arraignment in the military justice system as the commencement of trial. It may be that, in certain cases like this one, the trial of the merits does not actually begin immediately after arraignment,

though more usually than not it does. At the same time, a military accused is arraigned by a military judge, rather than a Federal magistrate, and that gives special force to the argument that the subsequently absent military accused has "by his own act remove[d] himself from the presence of a court trying him on a criminal charge...." *Id.* at 234, 8 CMR at 34.

Given these differences between the usual operation of the military justice system and the Federal civilian system, I see no compelling reason to deviate from the *Houghtaling* notion that, in the military justice system, arraignment constitutes commencement of the trial for purposes of marking the point after which an accused may be tried even though voluntarily absent. As well, I am satisfied, for these same reasons, that a military accused who absents himself after arraignment has done so just as knowingly as has a civilian defendant in the midst of trial.

SULLIVAN, Chief Judge (concurring in the result):

The majority opinion overlooks a significant constitutional issue raised by the Supreme Court decision in *Crosby v. United States*, —— U.S. ——, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993). There, the Supreme Court reversed a defendant's conviction because his absence from trial began before, not "after the trial has commenced" as required by Fed.R.Crim.P. 43. However, because it reversed on the basis of a Federal Rule of Criminal Procedure, the Supreme Court expressly noted that "we do not reach Crosby's claim that his trial *in absentia* was also prohibited by the Constitution." —— U.S. at ——, 113 S.Ct. at 753.

The facts of *Crosby* are as follows:

---

2. So that practitioners may not be misled in applying RCM 804, it might be advisable to incorporate into the rule the constitutional requirement that a waiver must be knowing.

3. Typically, a military judge will expressly advise an accused that, inasmuch as he has been arraigned, trial may proceed in his absence on the scheduled date. For some reason not re-

flected in the record, this military judge failed to given such advice—thus, the issue.

4. Indeed, it was just such a case that was offered to the Supreme Court in *Crosby*, but the Court declined to answer the constitutional question in light of its decision there that the trial violated Fed.R.Crim.P. 43. *Crosby v. United States*, —— U.S. ——, ——, 113 S.Ct. 748, 753, 122 L.Ed.2d 25 (1993).

In April 1988, a federal grand jury in the District of Minnesota indicted petitioner Michael Crosby and others on a number of counts of mail fraud. The indictment alleged that Crosby and his codefendants had devised a fraudulent scheme to sell military-veteran commemorative medallions supposedly to fund construction of a theme park honoring veterans. *Crosby appeared before a federal magistrate on June 15, 1988, and, upon his plea of not guilty, was conditionally released from detention after agreeing to post a $100,000 bond and remain in the State. Subsequently, he attended pretrial conferences and hearings with his attorney and was advised that the trial was scheduled to begin on October 12.*

Crosby did not appear on October 12, however, nor could he be found. United States deputy marshals reported that his house looked as though it had been "cleaned out," and a neighbor reported that petitioner's car had been backed halfway into his garage the previous evening, as if he were packing its trunk. As the day wore on, the court remarked several times that the pool of 54 potential jurors was being kept waiting, and that the delay in the proceedings would interfere with the court's calendar. The prosecutor noted that Crosby's attorney and his three codefendants were present, and commented on the difficulty she would have in rescheduling the case, should Crosby later appear, because some of her many witnesses were elderly and had health problems.

When the District Court raised the subject of conducting the trial in Crosby's absence, Crosby's attorney objected. Nevertheless, after several days of delay and a fruitless search for Crosby, the court, upon a formal request from the Government, decided that trial would commence on October 17. The court ordered Crosby's $100,000 bond forfeited and stated for the record its findings that Crosby had been given adequate notice of the trial date, that his absence was knowing and deliberate, and that requiring the Government to try Crosby separately from his codefendants would present extreme difficulty for the Government, witnesses, counsel, and the court. It further concluded that Crosby voluntarily had waived his constitutional right to be present during the trial, and that the public interest in proceeding with the trial in his absence outweighed his interest in being present during the proceedings. Trial began on October 17, with petitioner's counsel actively participating, and continued in Crosby's absence until November 18, when the jury returned verdicts of guilty on charges against Crosby and two of his codefendants. *See United States v. Cheatham,* 899 F.2d 747 (CA8 1990). One codefendant was acquitted.

Approximately six months later, Crosby was arrested in Florida and brought back to Minnesota, where he was sentenced to 20 years in prison followed by 5 years on probation with specified conditions. . . .

—— U.S. at ——, 113 S.Ct. at 750 (emphasis added).

Appellant, like Crosby, absented himself after arraignment. Nevertheless, the majority opinion affirms appellant's conviction on the basis of RCM 804, Manual for Courts–Martial, United States, 1984, and its trial-in-absentia provision which is worded differently from Fed.R.Crim.P. 43. It permits such trials if the accused "[i]s voluntarily absent after arraignment" rather than "after the trial has commenced" as Fed.R.Crim. 43 provides. Appellant's arraignment, however, was by a military judge rather than a Federal magistrate. Arraignment by a military judge begins a trial by court-martial. *See United States v. Houghtaling,* 2 USCMA 230, 8 CMR 30 (1953). Accordingly, I further conclude that the constitutional holding of the Supreme Court in *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912), is satisfied by RCM 804(b)(1) and no constitutional error occurred in this case.